IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DWIGHT BAKER, JR.,[1] | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 21-531 ) ) |
| KILOLO KIJAKAZI,<br>*Acting Commissioner of Social Security*,[2] | ) ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 14th day of March 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 23) filed in the above-captioned matter on May 11, 2022,

IT IS HEREBY ORDERED that the Motion is DENIED, and the matter is REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**I.      Background**

Plaintiff protectively filed applications for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, on December 21, 2015. (R. 32). After his claims were initially denied, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ"). (*Id.*). He ultimately appeared (by video) for two hearings before ALJ Susan Toth. (*Id.*). After the hearings, ALJ Toth authored a decision wherein she found Plaintiff had not been under a disability from his alleged onset date (May 1, 2003) through

---

[1]   Before the Court and in his administrative record, Plaintiff is referred to as Dwight Baker, Jr.  The Clerk is directed to amend the docket accordingly.

[2]   Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).  The change has no impact on the case, 42 U.S.C. § 405(g), and the Clerk is directed to amend the docket to reflect the substitution.

the date of decision (May 23, 2019).  (R. 46—47).  Plaintiff sought review of the decision before the Appeals Council, but the Appeals Council denied the request for review.  (R. 7).  Upon the Appeals Council's denial, the ALJ's decision became the final agency determination of Plaintiff's disability.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff sought review of the decision by filing a Complaint with the Court.  (Doc. No. 4).  A schedule was set for summary judgment motions (Doc. No. 19), but Plaintiff failed to move for summary judgment by the due date set therein.  Defendant moved for summary judgment and has asked the Court to affirm the ALJ's decision.  (Doc. No. 23).  Plaintiff has filed a response in opposition to Defendant's motion (Doc. No. 34), to which Defendant has filed her reply (Doc. No. 35).

**II.**     **Standard of Review**

The Court reviews an ALJ's findings for "substantial evidence," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)), and has plenary review with respect to legal questions.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate."  *Biestek,* 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This standard, while deferential, is not "a talismanic or self-executing formula for adjudication."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  An ALJ's disability determination must be thorough enough for a reviewing court to understand the ALJ's rationale.  *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014).  Therein, an ALJ should explain why "probative evidence has been rejected."  *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981).  If an ALJ fails to adequately explain the basis of his or her decision, the reviewing court may not justify the decision by its own review of evidence in the record.  *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

ALJs evaluate alleged disability under the Act using a five-step sequential evaluation. *Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017). Pursuant thereto:

> The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity [("SGA")]; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity [("RFC")].

*Id.* (citing 20 C.F.R. § 404.1520). Before proceeding to steps four and five, an ALJ must first formulate the claimant's RFC, which is a finding of "the most [a claimant] can still do despite [his or her] limitations" due to "medically determinable impairments" including those that are not severe. 20 C.F.R. §§ 404.1545(a)(1)—(2), (5); 416.945(a)(1)—(2), (5).

### III.    The ALJ's Decision

In her decision, the ALJ first found that Plaintiff had been engaged in SGA since his alleged onset date (May 1, 2003) through December 31, 2015. (R. 35). Having ruled out that time, the ALJ focused on the time following when Plaintiff had not been engaged in SGA. (*Id.*). Next, the ALJ found Plaintiff had seven severe, medically determinable impairments: "lumbar spine degeneration, depressive disorder, bipolar disorder, anxiety disorder, posttraumatic stress disorder, intermittent explosive disorder[,] and alcohol use disorder." (*Id.*). At step three of the ALJ's evaluation, none of Plaintiff's impairments nor any combination of impairments were found to meet or equal the criteria for one of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 36). As part of her step-three analysis, the ALJ

considered the severity of Plaintiff's mental impairments and found Plaintiff had only moderate limitations in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 36—37). The ALJ supported her findings of only moderate limitations of mental functioning, in part, by reference to Plaintiff's ability to pay bills, attend appointments, and take medications; his ability to spend time with friends/family; his good relationship with medical providers; findings of "linear and goal-oriented" thought processes and intact attention and concentration; and his ability to maintain personal hygiene. (*Id.*).

Having resolved the first and second, but not the third, steps of the five-step evaluation in Plaintiff's favor, the ALJ formulated Plaintiff's RFC. Based on Plaintiff's testimony, his objective medical records, and medical opinion evidence, the ALJ found Plaintiff's RFC consisted of a limited range of light work. (R. 38). The limitations she included in Plaintiff's RFC to accommodate his medically determinable impairments and associated symptoms included limitation to: simple instructions; "perform[ing] simple, routine[,] and repetitive tasks that are not performed as an integral part of a team"; jobs without a "production rate pace"; only occasional interaction with coworkers and supervisors; no interaction with the general public; and "simple work related decisions" and "occasional changes in the work setting." (*Id.*). Having formulated Plaintiff's RFC, the ALJ used it to assess Plaintiff's ability to return to past work and found Plaintiff could return to work as a "linen sorter." (R. 44). Alternatively, the ALJ found Plaintiff's age, education, work experience, and RFC would permit adjustment to other occupations that offered a significant number of jobs in the national economy. (R. 46). Based on these findings, the ALJ found Plaintiff to be "not disabled." (*Id.*).

4

IV. **Legal Analysis**

In his Complaint, Plaintiff has alleged that the ALJ failed to address evidence showing he had outbursts at work, a significant conflict with a medical treatment provider, and relational difficulty with family; therefore, Plaintiff has argued, the decision cannot be found to be supported by substantial evidence.[3] Because these allegations are borne out by the ALJ's

---

[3] Defendant has argued that Plaintiff's specific arguments are waived for failure to raise them in an opening brief. (Doc. No. 35, pgs. 1—2). In the Western District of Pennsylvania, it is customary for parties to Section 405(g) proceedings to present their positions in motions for summary judgment. In this matter, the Court set a schedule for the parties to file such motions upon Defendant's filing of her Answer and the certified copy of the transcript of administrative proceedings. (Doc. No. 19). Plaintiff failed to move for summary judgment by the deadline set in the Court's scheduling order. Though Defendant has argued Plaintiff's failure in this regard constitutes waiver of his challenges to the ALJ's decision, Plaintiff outlined objections to the ALJ's reasoning in his Complaint (Doc. No. 4) and opposed Defendant's defense of the ALJ's decision in his response to Defendant's summary judgment motion. (Doc. No. 34). This activity is inconsistent with an "intentional relinquishment or abandonment of a known right"; therefore, it is more appropriate for the Court to view Plaintiff's failure to file a motion for summary judgment and brief as a matter of forfeiture. *Schaffer v. Saul*, No. 2:19-CV-01153-PLD, 2020 WL 2526938, at *2 (W.D. Pa. May 18, 2020) (quoting *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017)) (explaining the difference between waiver and forfeiture in federal appellate proceedings). An issue, though forfeited, may be considered if there are "truly 'exceptional circumstances'" such as "when the public interest" demands consideration of an issue "or when a manifest injustice would result from the failure to consider" it. *Barna*, 877 F.3d at 147 (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001); *United States v. Anthony Dell'Aquilla, Enterprises & Subsidiaries*, 150 F.3d 329, 335 (3d Cir. 1998)).

As the Honorable Judge Dodge explained in *Shaffer*, this Court is not limited in the same way as federal appellate courts with respect to waiver and forfeiture. 2020 WL 2526938, at *2. Considering a motion for summary judgment, the Court may "grant summary judgment on grounds not raised by parties at all as long as they are given notice and an opportunity to be heard on this issue." *Id.* Here, Plaintiff alleged in the Complaint that the ALJ overlooked or rejected certain evidence without adequate explanation, and he continued to press his allegations in that regard in his response to Defendant's summary judgment motion. Plaintiff generally alleged in his Complaint (Doc. No. 4) that the ALJ found, *inter alia*, that Plaintiff "ha[d] no limitations on interacting with others" based on an "assumption (that Claimant lives with others and spends time with family – claimant never gave testimony regarding his relationships with family), that claimant had good rapport with providers – no explanation is given as to why the times the rapport with providers broke down and he made threatening statements is not relevant, nor is there explanation of why the times he was fired for making threats, or the discipline

decision and record, the Court will order remand of this matter for further administrative proceedings.

As the Court has discussed in Section II of its Order, the standard of review applied to an ALJ's findings of fact is deferential. The Court may not "conduct a *de novo* review of the [ALJ's] decision, or re-weigh the evidence of record." *Gamret*, 994 F. Supp. 2d at 698. Moreover, the mere "presence of evidence in the record that supports a contrary conclusion" does not necessarily undermine an ALJ's finding. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). However, the Court must judge an ALJ's decision on the ALJ's stated rationale. *Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943)). Accordingly, an ALJ "must provide at least a glimpse into his [or her] reasoning" by "build[ing] an accurate and logical bridge between the evidence and the result." *Gamret*, 994 F. Supp. 2d at 698 (quoting *Hodes v. Apfel*, 61 F. Supp. 2d 798, 806 (N.D. Ill. 1999)). Therein the ALJ must identify that evidence which supports his or her findings and give "some indication of

---

against him when he was in jail was not considered[.]" (Doc. No. 4, pg. 3). To this, Plaintiff added other allegations of insufficiently supported findings of fact and several alleged legal errors, *e.g.*, that the Commissioner had "[f]ail[ed] to explain why relevant evidence was rejected and/or failed to explain her reasoning in drawing her conclusions." (Doc. No. 4, pg. 4). As noted, Plaintiff pursued these arguments in his response, *e.g.*, arguing that the ALJ's finding of a good rapport with medical providers was undermined by evidence the ALJ failed to address like "threats made by the Claimant to medical providers." (Doc. No. 34, pg. 12). Defendant responded to Plaintiff's contentions on the merits, *e.g.*, arguing that the ALJ discussed Plaintiff's outbursts and included all appropriate limitations in the RFC. (Doc. No. 35, pg. 7).

Because Defendant had notice of the arguments raised by Plaintiff that the Court addresses herein, as well as an opportunity to respond to them, the Court will exercise its discretion to consider Plaintiff's challenges to the ALJ's decision. The Court further notes that its statutory authorization to review the Commissioner of Social Security's final decisions includes the "power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added). Accordingly, the Court is assured of its authorization to review the ALJ's findings for substantial evidence.

the evidence which was rejected" so a reviewing court can ensure no probative evidence was rejected "for no reason or for the wrong reason." *Cotter*, 642 F.2d at 705—06.

In this matter, it is apparent that the ALJ did not adequately explain her consideration of evidence showing significant interpersonal conflict with a medical provider, work colleagues, and family, which was contrary to her findings. The ALJ summarized the record with respect to Plaintiff's relationship with his medical providers as a "good rapport," and explained that Plaintiff had "no problem getting along well with providers and staff." (R. 37). But this summation of Plaintiff's relationship with his providers omits a significant incident during the relevant period (September 25, 2018) when Plaintiff was seen by a Dr. Robert Howland, MD. (R. 1189). When Dr. Howland explained to Plaintiff that he could not complete "paperwork" or write a letter regarding Plaintiff's "social security appeal," Plaintiff was noted to become "angry" and "threatening" before leaving the office. (*Id.*). Later the same day, Plaintiff admitted to Marianne McGrath that he said "threatening things" to Dr. Howland, but he assured Ms. McGrath "multiple times . . . that he would not take aggressive action toward Dr. Howland." (R. 1188). As he prepared to leave, he "confirmed that he would not engage in any aggressive behaviors toward anyone." (*Id.*). This evidence ought to have been addressed in the ALJ's assessment of Plaintiff's relationship with medical providers as evidence relevant to Plaintiff's ability to interact with others. Without any acknowledgement of this evidence by the ALJ, the Court cannot tell if it was rejected for a valid reason or overlooked.

Similarly, the Court finds the ALJ's evaluation of Plaintiff's testimony that he had difficulty with authority figures and coworkers lacked adequate consideration of evidence contrary to the ALJ's conclusions. In her evaluation of Plaintiff's testimony that he had difficulty with authority figures and coworkers, the ALJ remarked that Plaintiff's testimony was

"inconsistent with his ability to work at the [SGA] level through December 2015." (R. 42). In finding Plaintiff's work from his alleged onset date through 2015 was inconsistent with his testimony about interpersonal difficulties in work settings, the ALJ ought to have addressed evidence that Plaintiff made terroristic threats at one of the jobs he held during that time. Plaintiff testified that the day he was fired from the post office he had "made a threat to [his] supervisor and some other employees, and . . . told [them] that [he] had a gun in the car and [he] would take care of them." (R. 64). Plaintiff testified that the police were called and that he was arrested that evening. (R. 126). He also testified that, as part of this incident, he "left messages on [his] supervisor's phone and told him to kiss his kids goodbye." (*Id.*). Plaintiff's therapist wrote, concerning this incident, that Plaintiff had made terroristic threats at his job in 2013 (R. 1168) when Plaintiff was working for the United States Postal Service. (R. 341). Plaintiff also testified that when he worked for McConway & Torley (as a bench grinder (R. 127)) that he had gone "after [a coworker] to fight" because the coworker was being "silly" and threw something in his direction. (R. 63). As with her discussion of Plaintiff's relationship with medical providers, the ALJ ought to have addressed this evidence because the ALJ's decision provides no way of knowing whether this evidence was overlooked or rejected for an improper reason.

  The ALJ's decision similarly gives the Court pause with respect to the ALJ's analysis of Plaintiff's relationship with family and friends in her evaluation of Plaintiff's ability to interact with others. In her decision, the ALJ remarked that Plaintiff could "spend time with friends and family and live with others," and she found this supported a finding of moderate limitation in interacting with others. (R. 37). This summation of relevant interactions evidence seems to lack meaningful acknowledgment of Plaintiff's testimony concerning his fraught family dynamics. The ALJ acknowledged some evidence showing family difficulties, including 2016 records

wherein Plaintiff was noted to be "stressed and irritable" due to a hearing that involved his ex-girlfriend and her current partner (R. 40), and 2017 records wherein Plaintiff was noted to have "made some threatening comments about the judge and others involved in his court proceedings." (*Id.*). The ALJ also noted Plaintiff's "current stressors" included "legal issues with a protection from abuse violation." (R. 42). Plaintiff's testimony was that his ex-wife had "filed for . . . PFAs and some other things because she felt like [he] was a danger to be around her and the children." (R. 102). Given the ALJ's acknowledgment of certain evidence of some difficulties interacting with family, the deficit here is not that the ALJ overlooked this evidence but that there appears to be no logical bridge connecting such evidence to the ALJ's finding that Plaintiff's time spent with family and friends ran counter to the alleged severity of Plaintiff's limitation in interacting with others. On remand, analysis of Plaintiff's ability to interact with others should bridge this evidence with ultimate findings, even if by way of a clear rejection of such evidence.

Defendant has argued that the ALJ included interaction limits in Plaintiff's RFC and that Plaintiff has not shown how additional consideration of the record would have supported further functional limitations. However, while it may be the case that remand for further consideration of the evidence spotlighted in this Order will result in a finding of the same functional limitations, the Court cannot predict "with great confidence" that there would be no change. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that the harmless error doctrine permits affirmance where "it is

predictable with great confidence that the agency will reinstate its decision on remand").[4]

Accordingly, remand is the most appropriate outcome in this matter.

V.     **Conclusion**

The deficiency in the underlying decision that necessitates remand in this case is that evidence seemingly contrary to some of the ALJ's findings was not adequately addressed. On remand all analysis must be done in accordance with applicable law and any decision regarding Plaintiff's alleged disability must demonstrate consideration of all probative evidence. Accordingly, the Court remands this matter to the Acting Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch
United States District Judge

ecf:     Counsel of Record

---

[4]     The other issues Plaintiff has identified in his Complaint and response in opposition are that his therapist's opinions should have been afforded more weight; the State agency psychologist's opinions were given too much weight; the ALJ failed to consider Plaintiff's fluctuating ability to attend appointments and take medications; the ALJ relied too much on Plaintiff's purported ability to pay bills; and the ALJ ought to have considered Plaintiff's use of the Family and Medical Leave Act ("FMLA") during the years he was found to have SGA. The Court has already determined remand is necessary for further consideration of evidence relevant to Plaintiff's alleged limitations. Accordingly, the Court need not reach these other alleged deficiencies. The Order remanding this matter is broad enough to permit the presentation of such arguments on remand.